IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF CABLE NEWS NETWORK, INC., AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, THE ASSOCIATED PRESS, BUZZFEED, INC. d/b/a BUZZFEED NEWS, CBS BROADCASTING INC. o/b/o CBS NEWS, DOW JONES & COMPANY, INC., PUBLISHER OF THE WALL STREET JOURNAL, GANNETT CO., INC., GRAY MEDIA GROUP, INC., NATIONAL PUBLIC RADIO, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE NEW YORK TIMES COMPANY, PRO PUBLICA, INC., TEGNA, INC., and WP COMPANY LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED VIDEO EXHIBITS | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EXPEDITED MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED VIDEO EXHIBITS**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for the Press Coalition*

**PRELIMINARY STATEMENT**

Without question, the public has a powerful interest in closely observing the Government's administration of justice in the prosecutions against people accused of committing violent crimes during the January 6, 2021 riot at the United States Capitol. The courts can best reinforce public confidence in the sanctity of our political institutions, the safety of the law enforcement officers who protect them, and the fair administration of justice, by ensuring public access to these unprecedented proceedings.

Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, Gannett Co., Inc., Gray Media Group, Inc., National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a the Washington Post (together, the "Press Coalition") seek to advance these interests by obtaining footage of the violence at the Capitol that the Government presented during a recent pretrial detention hearing, but that has been maintained under seal ever since.

Specifically, the Press Coalition seeks to vindicate the public's First Amendment and common law right of access to several police body-worn camera ("body cam") video recordings that depict two men using a chemical irritant spray to debilitate several Capitol police officers – one of whom subsequently died from injuries he suffered while defending his post. The Government played these videos in open court and entered them as exhibits in the case file during the detention hearing for defendant George Pierre Tanios. The Court then expressly relied on that footage in granting the Government's motion to continue detaining Tanios before trial.

1

These videos (the "Video Exhibits") are judicial records to which the public has a right of access under both the First Amendment and the common law. Moreover, the D.C. Circuit has expressly held that when judicial records "become known to members of the public, including representatives of the press, through their attendance at a public session in court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." *United States v. Thompson*, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989). No such circumstances are present here.

Given the intense public interest in these proceedings and the settled case law that makes judicial secrecy the rare exception, not the rule, it should come as no surprise that Chief Judge Howell just last week granted access to videos of the Capitol riot that were shown during a different defendant's pretrial detention hearing. *See United States v. Jackson*, No. 21-mj-115, 2021 U.S. Dist. LEXIS 49841, at *24 (D.D.C. Mar. 17, 2021) ("Taken together, the presumption of access and additional interests supporting the media request weigh heavily in favor of granting access to the Video Exhibits. The countervailing interests, most notably any risk of prejudice to the defendant, are simply insufficient to justify shielding the exhibits from public scrutiny.").

The Court should reach the same conclusion here, grant the Press Coalition's motion to unseal the Video Exhibits, and direct the Clerk to release the records to the public immediately.

**FACTUAL BACKGROUND**

I. **The Riot At The United States Capitol**

As is now known worldwide, on January 6, 2021, thousands operating under "the guise of First Amendment-protected activity" stormed the U.S. Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI

.                                                            2

(Jan. 7, 2021), https://www.fbi.gov/news/pressrel/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721.  Immediately afterwards, federal law enforcement officers "deployed [their] full investigative resources . . . to aggressively pursue those involved in criminal activity." *Id.*  The Department of Justice has since charged more than 300 individuals with crimes committed at the Capitol, and the FBI continues to seek out information about dozens more seen in photographs and videos captured at the Capitol that day. *See, e.g.*, *U.S. Capitol Violence*, FBI, https://www.fbi.gov/wanted/capitol-violence; *Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

At least 65 suspects have been arrested for assaulting police officers during the Capitol riot, and the FBI seeks help identifying even more individuals seen on video "committing egregious crimes against those who have devoted their lives to protecting the American people." *FBI Washington Field Office Releases Videos of Assaults on Officers at U.S. Capitol, Seeks Public's Help to Identify Suspects*, FBI (Mar. 18, 2021), https://www.fbi.gov/contact-us/field-offices/washingtondc/news/press-releases/fbi-washington-field-office-releases-videos-of-assaults-on-officers-at-us-capitol-seeks-publics-help-to-identify-suspects.

Of particular interest to both federal law enforcement and the general public is the investigation and prosecution of individuals responsible for injuring U.S. Capitol Police Officer Brian D. Sicknick, who tragically suffered fatal injuries defending the Capitol.  *See, e.g.*, *Statement of Acting Attorney General Jeffrey A. Rosen on the Death of U.S. Capitol Police Officer Brian D. Sicknick* (Jan. 8, 2021), https://www.justice.gov/opa/pr/statement-acting-attorney-general-jeffrey-rosen-death-us-capitol-police-officer-brian-d.  The Department of Justice has promised that it will "spare no resources in investigating and holding accountable those responsible" for Officer Sicknick's death.  *Id.*

.                                                                3

## II. The Prosecution Of George Pierre Tanios

On March 6, 2021, the Government filed a criminal complaint and arrest warrant against Julian Khater and George Pierre Tanios, and prosecutors requested that those records be sealed to ensure "the ability of the United States to locate and arrest the defendants" and prevent "the destruction of evidence in other locations including electronic devices." Motion to Seal, *United States v. Khater et al.*, No. 1:21-cr-00222-TFH (D.D.C. Mar. 6, 2021), Dkt. 3. The Court granted the motion and sealed the filings "until the arrest warrant is executed." Order, Dkt. 4. Arrest warrants for both Khater and Tanios were executed on March 14, 2021, at which time the docket was unsealed. *See* Arrest Warrants, Dkts. 5, 6.

According to FBI Special Agent Riley Palmertree, who submitted a sworn affidavit with the criminal complaint, Khater and Tanios sprayed Officer Sicknick, another Capitol Police Officer, and a Metropolitan Police Department Officer "with an unknown chemical substance by spraying officers directly in the face and eyes" as other rioters attempted to "forcibly remove the . . . barriers that were preventing the rioters from moving closer to the Capitol building." *See* Compl. at 2, Dkt. 1. The FBI had asked the public for help identifying the two suspects, who could be seen in surveillance footage and body cam video spraying officers, including Officer Sicknick. Compl. ¶¶ 3-4. Based on a tip, the FBI was able to identify Khater and Tanios as the suspects depicted in those videos. *Id.*

The Government charged Khater and Tanios under 18 U.S.C. § 372 (Conspiracy to Impede or Injure an Officer); 18 U.S.C. §§ 111(a)(1), (b), and 2 (Assault on a Federal Officer with a Dangerous Weapon and Aiding and Abetting); 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. §§ 1512(c)(2) (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a)(1), (b)(1)(A), (b)(1)(B) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury); 18 U.S.C. §§ 1752(a)(2), (b)(1)(A),

.                                    4

(b)(1)(B) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury); 18 U.S.C. § 1752(a)(4), (b)(1)(A), (b)(1)(B) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury); and 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in the Capitol Grounds or Buildings). *See* Indictment, Dkt. 8.

### III.     Tanios's Pretrial Detention Hearing

Tanios was arrested in Morgantown, West Virginia, and he appeared for a virtual detention hearing before Magistrate Judge Aloi of the Northern District of West Virginia on March 22, 2021. *See* Detention Order, *United States v. Tanios,* No. 1:21-mj-00027-MJA (N.D. W. Va. Mar. 23, 2021), Dkt. 28. During the hearing, Judge Aloi told Tanios, "My obligation is to the safety of our community, and I don't think I've ever seen anything play out in a way that was more dangerous to our community [and] I have no question that, in your own way, Mr. Tanios, you chose to be part of that." *See* Zoe Tillman, *A Judge Ordered Jail For One Of Two Men Charged With Assaulting Officer Brian Sicknick*, BuzzFeed News (Mar. 22, 2012), https://www.buzzfeednews.com/article/zoetillman/capitol-police-brian-sicknick-death-george-tanios-jailed.

The public, including reporters for the news outlets in the Press Coalition, observed the hearing on Zoom. During the hearing, the Government proffered fifteen exhibits in support of its argument that Tanios should not be released on bail. *Id.* The majority of these exhibits (Exs. 3-9) were clips of police body cam footage depicting Tanios and Khater's alleged attacks on the officers. The press and public attending on Zoom were able to watch these Video Exhibits as they were shown to the court.

.                                                                 5

### IV.      The Requested Records

On March 22, 2021, CNN reporter Katelyn Polantz submitted a request to the Clerk of Court for the Northern District of West Virginia for access to the Video Exhibits as shown during the hearing. *See* Exhibit A. The clerk's office responded that hearing exhibits in all federal courts are automatically restricted to the attorneys of record and could only be unsealed by court order. *Id.* The clerk's office further stated "because the underlying case in this matter lies with the US District Court for the District of Columbia, we do not believe that it would be appropriate for our court to release the restricted exhibits relating to Mr. Tanio's detention hearing held today." *Id.* Later that day, Polantz emailed the Clerk of this Court and requested access to the Video Exhibits. *See* Exhibit B. The Clerk's Office did not grant such access.

## ARGUMENT

The Court should unseal the Video Exhibits for several independently sufficient reasons. First and foremost, the Video Exhibits have already been shown in open court and viewed by members of the public – including reporters from the Press Coalition – and as a result in this Circuit copies must be made available to the rest of the public absent "the most extraordinary circumstances." *Thompson*, 1989 U.S. App. LEXIS 19909, at *3. Such circumstances do not exist here. Moreover, because the First Amendment right of access applies to the Video Exhibits, they must be unsealed because neither Tanios nor the Government could possibly show that continued sealing "is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). The common law access right also applies to the records, and "[a]lthough [this] right is not absolute, there is a strong presumption in its favor," which cannot be rebutted on the facts on this case. *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017);

*Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-24 (granting access to similar video exhibits under the common law right of access).

I.      **The Court Should Unseal The Exhibits Because They Were Already Made Public**

The D.C. Circuit has made clear that when "evidence has become known to members of the public, including representatives of the press, through their attendance at a public session in court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence." *Thompson*, 1989 U.S. App. LEXIS 19909, at *3 (quoting *United States v. Myers*, 635 F.2d 945, 952 (2d Cir. 1980)). Once records have been shown in open court, subsequent disclosure "only . . . confirm[s] to the public what was already validated" through other court records and official sources. *Washington Post v. Robinson*, 935 F.2d 282, 287, (D.C. Cir. 1991) (no compelling interest existed to seal a plea agreement, terms of which were already published in news articles); *Thompson*, 1989 U.S. App. LEXIS 19909, at *2 (wiretapped conversations presented and prepared for presentation by the prosecution "merely reproduce what has been or will be presented in open court" and could not be withheld from the media); *Commonwealth v. Upshur*, 924 A.2d 642, 653 (Pa. 2007) (holding that "audiotapes played during preliminary hearings are public judicial records or documents to which the common law right of access attaches" and ordering release of requested tapes); *cf. Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (recognizing in FOIA context that "our cases leave little doubt that audio tapes aired publicly in open court become a part of the public domain").

The Video Exhibits were shown to the Court as well as the general public watching Tanios' March 22 detention hearing on Zoom, and the contents of the Video Exhibits have been described in detail in the now-unsealed Complaint, the Detention Order, and news reports by

.                                                                        7

members of the Press Coalition.  *See* Compl. at 2, *Khater et al.*, No. 1:21-cr-00222-TFH; Detention Order, *Tanios*, No. 1:21-mj-00027-MJA; *see, e.g.*, Katelyn Polantz, *Man accused of carrying bear spray used in assault of Capitol Police Officer Brian Sicknick to stay in jail*, CNN (Mar. 22, 2021), https://www.cnn.com/2021/03/22/politics/brian-sicknick-bear-spray/index.html; Spencer S. Hsu and Emily Davies, *W.Va. man charged in assault on Capitol officer is ordered held pending trial*, Wash. Post (Mar. 22, 2021), https://www.washingtonpost.com/local/legal-issues/george-tanios-detained-brian-sicknick/2021/03/22/3fa0a758-8b43-11eb-a730-1b4ed9656258_story.html.

Indeed, footage of these suspects and the events in question have already been widely disseminated by the FBI and the Press Coalition.  *See, e.g.*, *U.S. Capitol Violence,* FBI, https://www.fbi.gov/wanted/capitol-violence (including photographs of Tanios and Khater (#190 and #254) and noting they are "ARRESTED"); Evan Hill et al., *Officer Brian Sicknick Died After the Capitol Riot. New Videos Show How He Was Attacked.*, N.Y. Times (Mar. 24, 2021), https://www.nytimes.com/interactive/2021/03/24/us/officer-sicknick-capitol-riot.html.

Because no "extraordinary circumstances" exist here, the Video Exhibits that were already viewed by those attending the pretrial detention hearing should immediately be unsealed.

## II.     The Court Should Unseal The Exhibits Under The First Amendment Access Right

The Court should also unseal the Video Exhibits under the First Amendment.  "The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding."  *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring).  "First the court must determine whether a qualified First Amendment right of public access exists.  If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.*

(internal marks and citations omitted).  Here, the right of access clearly attaches to the pretrial detention hearing and the Video Exhibits shown to the court and the public and placed into the case file during that hearing.  Neither Tanios nor the Government could possibly carry the weighty burden to overcome that right and justify closure.

### A. The First Amendment access right attaches to the Video Exhibits

Courts follow the "experience and logic" test to determine where the constitutional right of access right to records or a proceeding.  *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986).  Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the function of the particular process."  *Id*. at 8.  Applying this test here, the constitutional right of access right plainly attaches to the Video Exhibits.

It is already well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings" and related judicial records.  *In re Application of WP Co.*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603-04 (1982)).  Moreover, this access right clearly applies to pretrial proceedings as well. *See Press-Enterprise II*, 478 U.S. at 12-13 (holding that First Amendment right of access applies to preliminary hearing in criminal case and observing that "the absence of a jury, long recognized as an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge, makes the importance of public access to a preliminary hearing <u>even more</u> significant") (emphasis added and citation and internal marks omitted).[1]

---

[1] *See also In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) ("The same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials . . . operate in pretrial proceedings.  The decision to release on bail an accused who subsequently flees the jurisdiction may effectively end the trial before it has begun; the decision to hold an accused without bail deprives of his liberty a citizen who has not yet been convicted of a crime.  In either case, the bail decision is one of major importance to the

.                                                                      9

### B. The First Amendment access right cannot be overcome on this record

Because this constitutional right of access applies to the Video Exhibits, the Court should release them unless secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring). Specifically, to overcome the constitutional access right, the party seeking closure must demonstrate that:

1. There is a substantial probability of prejudice to a compelling interest if the right is not limited. *Press-Enterprise II*, 478 U.S. at 13-14.

2. There is no alternative to a limitation of the access right that will adequately protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 289-90.

3. Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

4. The restriction on access is narrowly tailored to minimize the harm to the public's access rights. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

Nothing on the record of this case even suggests that continuing to seal the Video Exhibits is essential to preserve any higher values. To the contrary, because the Video Exhibits have already been published in open court, unsealing the exhibits "could hardly . . . pose[] any additional threat to the ongoing criminal investigation." *Robinson*, 935 F.2d at 291-92 (granting access to sealed plea agreement based in part on the substantial amount of already-public information about the matter, including information reported by the press).

Moreover, even if the Government or the Defendant could assert that unsealing the Video Exhibits would create a potential risk of harm, and they cannot, that still would not be enough to justify continued sealing because they would also need to demonstrate that alternative measures

---

administration of justice, and openness will help to assure the public that the decision is properly reached.").

.  10

cannot adequately redress that risk. *Id.* at 290; *cf. In re Application of NBC*, 653 F.2d 609, 613-17 (D.C. Cir. 1981) (applying this requirement to common law access test).

Because the First Amendment right of access applies to the Video Exhibits, and there are no findings on the public record demonstrating that continued sealing is essential to preserving any higher values, the Court should grant access to the Video Exhibits immediately.

### III. The Court Should Unseal The Exhibits Under The Common Law Right Of Access

The Video Exhibits should also be released pursuant to the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife*, 865 F.3d at 663. Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *Id.* at 665-67. If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted. 650 F.2d 293, 317-21 (D.C. Cir. 1980). For precisely the same reasons that Chief Judge Howell recently articulated in the *Jackson* case, the Video Exhibits are judicial records to which the public has a presumptive right of access under the common law, and the *Hubbard* factors do not rebut that strong presumption. *See Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-24.

Moreover, as the D.C. Circuit has recognized, there is a particular "need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision.'" *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal marks omitted) (quoting *Hubbard*, 650 F.2d at 318). Here the Magistrate Judge referred to video footage many times throughout the decision to keep Tanios detained before trial. *See* Detention

.                                                                 11

Order at 6-7, *Tanios*, No. 1:21-mj-00027-MJA.  This Court should therefore grant public access to the Video Exhibits pursuant to the common law as well.

## **CONCLUSION**

For the foregoing reasons, the Press Coalition respectfully requests that this Court grant its motion and enter an order directing the Clerk to unseal the Video Exhibits immediately.

Dated:  March 24, 2021  Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for the Press Coalition*